[No. 12047. In Bank.—February 7, 1888.]

## J. F. HOUGHTON, APPELLANT, v. THOMAS ALLEN ET AL., RESPONDENTS.

VENDOR AND VENDEE—CONTRACT FOR SALE OF LAND—MORTGAGE BY VENDEE—SUBSEQUENT CONVEYANCE BY VENDOR—FORECLOSURE.—On the 22d of August, 1870, one Jackson, the owner of the land in controversy, entered into a written contract with the defendant Allen, whereby he agreed to convey the same to him on the twenty-second day of August, 1872, provided Allen paid him a certain amount in cash, and the balance on certain subsequent dates. The contract provided that time should be of its essence, and that if Allen made default in the deferred payments, Jackson should be released from the obligation of performance, and should sell the land at public auction for cash, and out of the proceeds should retain the amount due him on the contract, together with the expenses of sale, and pay the overplus, if any, to Allen. This contract was not recorded until the 9th of July, 1872. Allen went into possession under the contract, and while in possession, on the 6th of April, 1871, mortgaged the lands to the plaintiff. Allen made default in the deferred payments, and the plaintiff never paid or offered to pay the same. On the 12th of January, 1872, Jackson, with the consent of Allen, for a valuable consideration, conveyed the land to the defendant Dresbach, who knew of the contract between Jackson and Allen. No demand was ever made upon Jackson or Dresbach to sell the land at public auction. *Held*, that the title acquired by Dresbach was adverse

to that acquired by the plaintiff under his mortgage from Allen, and was not subject thereto, and could not be cut off in an action to foreclose the mortgage.

APPEAL from a judgment of the Superior Court of Yolo County.

The facts are stated in the opinion of the court.

*Beatty, Denson & Oatman,* for Appellant.

The land in controversy was subject to the lien of the plaintiff's mortgage. (2 Story's Eq. Jur., sec. 1021; *Haffley* v. *Maier,* 13 Cal. 13; Civ. Code, Deering's ed., sec. 2947, and cases cited in note; Boone on Mortgages, secs. 16, 34, 136.)

*A. P. Catlin,* for Respondent.

McFARLAND, J. — After a full consideration of this case in Bank, we have reached the conclusion that the judgment of the court below should be affirmed.

The action is brought by plaintiff, Houghton, to foreclose a mortgage executed to him on April 6, 1871, by defendant Allen. The mortgage includes certain land not in contest here; and also lots 6, 7, and 8,—the premises in controversy.

The court below rendered judgment foreclosing the mortgage as to the other land, but refused to include lots 6, 7, and 8 in the decree. From the last-named part of the judgment plaintiff appeals.

The complaint is in the usual form, and proceeds upon the theory that Allen was the owner in fee of the lots in question. The averments as to those lots are the same as the averments as to the other property included in the mortgage. If the theory of the complaint had been carried out in the judgment, all right of defendant Dresbach in the said lots would have been foreclosed, and as against him the purchaser at the foreclosure sale would have taken an unencumbered fee-simple title.

But Allen was not the owner of the lots. On the twenty-second day of August, 1870, these lots were owned in fee by John P. Jackson; and on said day Jackson made a written contract with Allen by which he agreed to convey them to Allen on the twenty-second day of August, 1872, provided Allen would pay him fifty dollars in cash, and one hundred dollars on August 22, 1881, and one hundred dollars on August 22, 1882,—the two deferred payments to bear interest at twelve per cent per annum. It was provided that time should be considered as of the essence of the contract; and that if Allen failed or neglected to make either of the payments, Jackson should be wholly released and discharged of any claim at law or in equity for a performance of the contract, etc. Allen paid the fifty dollars, and went into possession. While in possession—and on April 6, 1871—he executed to Houghton the mortgage above referred to, which included these lots. But when the first one hundred dollars became due, Allen failed to pay any part of it, and has totally neglected to pay any part of either of the deferred payments; and Houghton never paid or offered to pay anything on the contract. On the twelfth day of January, 1872, Jackson, for a consideration of $250, conveyed the lots to the defendant Dresbach. The contract between Jackson and Allen was not recorded until July 9, 1872; but when Jackson conveyed to Dresbach, Allen, being in default, consented to the conveyance, and to deliver the possession to Dresbach. The deed to Dresbach recited that there had been a contract with Allen, and that the conveyance was made at Allen's request. This was the first notice, so far as it appears, which Dresbach had of the character of Allen's possession.

If there were nothing in the contract more than as above stated, it would be clear that no interest of any kind in the lots in question remained in Allen or Houghton. There was another clause, however, which provided

that upon the failure of Allen to make any payment, "it shall be the duty" of Jackson to sell the lots at public auction for cash, and of the proceeds to retain the amount due him on the contract, with the expenses of sale, etc., and pay the overplus, if any, to Allen.   No demand was ever made upon Jackson or Dresbach to sell the lots. But it is contended that as the property was not sold at auction, therefore, in some way or other, the title passed to Allen, and that Houghton can subject it, free from any other claim whatever, to the payment of his demand against Allen; that is, that Houghton can get the lots, by virtue of his mortgage, without paying for them.

Admitting, for the present, that Allen, as against Houghton, could not waive the sale of the lots at auction, and that no demand for such sale was necessary; and admitting further that if Houghton had foreclosed whatever interest Allen had in the lots by virtue of the contract, and purchased at the foreclosure sale, he might have maintained an action against Dresbach for the direct purpose of compelling a sale at auction, and the appropriation of the surplus, if any, over the contract debt, to Houghton,—still, it seems clear that in this present action the title of Dresbach cannot be foreclosed and cut off.   The rights only of those who hold or claim under the mortgagor can be determined in an action to foreclose a mortgage; a title claimed adversely to the mortgagor cannot be thus litigated.   (*Crogan* v. *Spence*, 53 Cal. 15; *Marlow* v. *Barlow*, 53 Cal. 456; *San Francisco* v. *Lawton*, 18 Cal. 465.)   Dresbach did not hold or claim under the mortgagor, Allen; he held under Jackson, and stood in the latter's shoes.   He was, therefore, not a proper party to the action.   Having been made, however, a defendant under the general averment that he had or claimed some interest in the mortgaged premises which was "subsequent and subject" to the mortgage, he was forced to answer.   His answer set forth the nature of his interest, and denied that it was subject to

the mortgage. The court sustained his defense, and we think, correctly.

Judgment affirmed.

McKINSTRY, J., SEARLS, C. J., THORNTON, J., and SHARPSTEIN, J., concurred.

PATERSON, J., dissenting.—I dissent. Allen held a mortgageable interest. (Civ. Code, sec. 2947; *Jones* v. *Lapham*, 15 Kan. 540; *Laughlin* v. *Braley*, 25 Kan. 147; *Crane* v. *Turner*, 67 N. Y. 437.) He mortgaged that interest to plaintiff for a valuable consideration. The mortgage was recorded April 7, 1871, nearly a year before Dresbach purchased. This record, and Allen's request, while in possession, that Jackson should convey to Dresbach, gave the latter full notice of Houghton's claim. He knew that Allen had mortgaged his interest in the property. He saw Allen in possession of the premises, and was bound to know what interest Allen held, and having notice of the facts, he could not defeat Houghton's lien. Jackson could not have conveyed to Dresbach so as to deprive Allen of his interest under the contract, without Allen's consent. Allen's interest did not cease upon the failure to pay the installment due August 22, 1872. So long as Jackson was satisfied to allow Allen to remain in possession without payment of the installments, there was no determination of the interest held by Allen. After pledging all the rights he held under the contract to Houghton as security for the payment of his obligation, Allen could not in equity destroy the effect of that security by a voluntary surrender or waiver which had neither consent nor consideration to support it, so far as Houghton was concerned. Certainly the rights of Dresbach could not be enlarged over those of Jackson under the circumstances, in consequence of the deed from the latter to the former (*Baker* v. *Bishop Hill Colony*, 45 Ill. 264), and Allen, Jackson, and Dres-

bach "could not covertly, or without notice to them [mortgagees], defeat their mortgage, or rather deprive them of their equities." (*Sinclair* v. *Armitage*, 12 N. J. Eq. 177.) There can be no question that among the equities secured to Houghton by his mortgage is the right to have the property sold at auction to the highest bidder, and after payment of the balance due upon the contract, to have the overplus, if any, applied to the satisfaction of his mortgage. Plaintiff had the right to assume that the contract would be carried out in all respects, and the purchaser, not being in default at the time of the execution and delivery of the mortgage, could not, after receiving plaintiff's money ($921.75), upon the faith and security of the contract, stipulate away this right. If Jackson had retained the ownership of the property, he would have been in duty bound to sell the lots at public auction for cash, and out of the proceeds retain the amount due him on the contract, with the expenses of sale; and the overplus, if any, would have been subject, in equity, to the satisfaction of Houghton's lien. Dresbach stands in no better position than Jackson would under those circumstances; and if he stands in Allen's shoes, he is not entitled even to be first paid out of the proceeds the purchase-money advanced.

Assuming his rights to be equal to those of Jackson, the decree should be modified so as to include lots 6, 7, and 8, and to have the proceeds of the sale, or so much as may be necessary, applied to the satisfaction of plaintiff's mortgage, after retaining out of the proceeds the amount which was due on the contract at the time of the purchase by Dresbach, together with interest and the expenses of sale. The execution of such a decree would be a substantial compliance with the terms of the contract and secure the rights of all parties without further litigation.